# FOR PUBLICATION

FILED & ENTERED

JAN 09 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY zamora    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>Rufus Suttice and Karen Dianne Polley-Suttice,<br><br>Debtor(s). | Case No.: 6:12-bk-21006-SC<br><br>Chapter: 7<br><br>**ORDER AND AMENDED OPINION DENYING MOTION TO DISMISS FOR ABUSE**<br><br>Date: November 14, 2012<br>Time: 11:00 a.m.<br>Ctrm: Video Hearing Room 126<br>  3420 Twelfth Street<br>  Riverside, CA 92501<br><br>and<br><br>Courtroom 5C<br>411 West Fourth Street<br>Santa Ana, CA 92701 |

Before this Court is a Motion to Dismiss Case for Abuse pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(3)[1] (the "Motion to Dismiss"), filed by Movant Peter C. Anderson, the United States Trustee for the Central District of California (the "U.S. Trustee").

## BACKGROUND

---

[1] Unless otherwise noted, all statutory references are to Title 11, United States Code (the "Bankruptcy Code").

1

Mr. Rufus Suttice and Mrs. Karen Polley-Suttice, 85 and 69 years old respectively, filed a chapter 7 bankruptcy petition on May 3, 2012. [Dk. 1]. The Debtors included a Chapter 7 Statement of Current Monthly Income and Means-Test Calculation, indicating that a presumption of abuse under § 707(b)(2) did not arise. [Dk. 1 at 51]. The Debtors' Second Amended Schedule I and J reflect a combined monthly income of $8,532.90, consisting of: $1,072.90 from social security benefits, combined pension or retirement income of $6,572.00, Veteran Affairs Benefits of $488.00, and family contributions of $400.00 [Dk. 66 at 3], and expenses totaling $7,635.96 per month [Dk. 66 at 4], leaving a net balance of $896.94 per month in surplus income. [Dk. 66 at 4].

On June 18, 2012,[2] the U.S. Trustee filed a statement of presumed abuse. [Dk. 21]. On July 16, 2012,[3] the U.S. Trustee filed the Motion to Dismiss, arguing that the Debtors have a monthly surplus income of $1,874.75, based upon the Debtors' First Amended Schedules, and that their case should be dismissed for abuse. [Dk. 29 at 4:18-19]. On September 7, 2012, a substitution of attorney was filed, substituting-in the Debtors' current counsel. [Dk. 49]. On October 3, 2012, the Debtors filed an opposition stating that their prior counsel had both overstated their income and understated their expenses. [Dk. 58 at 6]. Specifically, the expenses omitted from Schedule J included an additional mortgage payment, HOA dues, homeowner's insurance, and personal grooming, which would reduce the Debtors' net surplus income to $1,116.07 per month. [Dk. 58 at 5:13]. The Debtors later filed a Second Amended Schedule I and Schedule J, which reflect a current net surplus income of $896.94 per month. [Dk. 66 at 4].

The hearing on the Motion to Dismiss was held on November 14, 2012. Relying on the Ninth Circuit case *In re Price*, 353 F.3d 1135 (9th Cir. 2004), the U.S. Trustee argued that the Debtors' chapter 7 should be dismissed as abusive based on the totality of the circumstances of the Debtors' financial situation pursuant to § 707(b)(3)(B). The U.S. Trustee focused its

---

[2] The Court notes that the U.S. Trustee's statement of presumed abuse was filed within 10 days of the Debtors' June 8, 2012 meeting of creditors [Dk. 6], as required by § 704(b)(1)(A).
[3] The Court notes that the U.S. Trustee's Motion to Dismiss was filed within 30 days of the statement of presumed abuse, as required by § 704(b)(2).

2

argument on one of several factors enumerated in *Price* for determining abuse—the Debtors' ability to fund a chapter 13 plan. The U.S. Trustee further argued that social security benefits may be taken into account when assessing the ability of the Debtors to fund a chapter 13 plan for purposes of § 707(b)(3)(B). [Dk. 29, 3 n. 4]. The U.S. Trustee argued that *Price* remains operative law post-enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and that subsequent cases in the Ninth Circuit continue to honor *Price* as guiding authority.

The Debtors' counsel argued in his opposition brief that "a debtor's case should not be dismissed solely due to surplus income which is not otherwise included in the means test," and that including social security income in a § 707(b)(3)[4] analysis would circumvent the means test of § 707(b)(2). [Dk. 58 at 7:5-7]. Debtor's counsel asserted that if the Debtors converted to chapter 13, they would not be compelled to remit their social security income to the plan. [Dk. 58 at 7:8-12] (citing *In re Welsh*, 465 B.R. 843, 852-55 (9th Cir. BAP 2012).[5] Debtors' counsel concluded that because, under *Welsh*, a finding of bad faith in chapter 13 under § 1325(a)(3) may not be based solely on "the mere fact that the debtor has excluded income or deducted expenses that the Code allows" (*Welsh*, 465 B.R. at 855), therefore, the same principle applies in chapter 7. [Dk. 58 at 7:7-8]. At the hearing, Debtors' counsel further argued that the "ability to pay" factor from *Price* was abrogated by BAPCPA. Debtors' counsel argued in the alternative that even if *Price* was not abrogated by BAPCPA, the totality of the circumstances

---

[4] The Court notes at this point that the instant Motion to Dismiss is not based on determining abuse under the good faith standard of § 707(b)(3)(A), but rather whether the totality of circumstances of the Debtors' financial situation give rise to a finding of abuse under § 707(b)(3)(B). *See* Motion to Dismiss, Dk. 29 at 3:20-22 ("The U.S. Trustee is exercising his discretion to proceed under Section 707(b)(3)'s totality of the circumstances test . . . ."). The Court points this out in an effort to avoid confusion between § 707(b)(3)(A) and § 707(b)(3)(B). *See In re Mitchell*, 357 B.R. 142, 155 n.12 (Bankr. C.D. Cal. 2006).

[5] The Court notes that Judge Pappas's dissent in the Ninth Circuit B.A.P. case of *In re Welsh*, cited by the Debtors in their opposition brief, states in dicta that "Interestingly, . . . Social Security income would apparently be relevant in determining whether, in a case in which no statutory presumption arises, granting the debtor chapter 7 relief would otherwise be an 'abuse' under § 707(b)(3). *See In re Calhoun*, 396 B.R. 270, 274 (Bankr. D.S.C. 2008). To make that decision, the statute requires the bankruptcy court to consider whether 'the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.' " quoting 11 U.S.C. § 707(b)(3)(B). *In re Welsh*, 465 B.R. 843, 863 n.18 (B.A.P. 9th Cir. 2012) (Pappas, J. dissenting). The Court further notes that the bankruptcy court decision of *In re Calhoun* was subsequently affirmed by the Fourth Circuit; however, the Fourth Circuit specifically declined to decide whether social security benefits should be considered in the totality of the circumstances analysis under § 707(b)(3)(B).

of this case do not demonstrate abuse, based on the Debtors' live testimony regarding current and future anticipated expenses related to their age, health, and medical conditions.

## DISCUSSION

Under § 707(b)(1), the Court may dismiss a chapter 7 case of an individual debtor whose debts are primarily consumer debts if the court finds that granting a discharge would be an abuse[6] of chapter 7. Section 707(b)(2) provides two standards for determining "abuse" under § 707(b)(1). First, abuse is presumed if the debtor fails the means test of § 707(b)(2), based on his current monthly income.[7] Second, the Court may find actual abuse if the petition was filed in bad faith (§ 707(b)(3)(A)) or if "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse" (§ 707(b)(3)(B)). The instant Motion to Dismiss seeks dismissal based only on the totality of the circumstances test of § 707(b)(2)(B).[8]

The phrase "totality of the circumstances" is not defined in the Bankruptcy Code, and § 707(b)(3)(B) itself provides no guidance as to what factors might bear on the bankruptcy court's inquiry, other than its plain text, which states that the totality of circumstances should relate to "the debtor's financial situation." *In re Ng*, 477 B.R. 118, 126 (B.A.P. 9th Cir. 2012). Nonetheless, the Ninth Circuit case of *Price* provides several non-exhaustive factors indicative of abuse under § 707(b)(3)(B), namely:

1. Whether the debtor has a likelihood of sufficient future income to fund a chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;

2. Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;

3. Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;

---

[6] BAPCPA modified the Bankruptcy Code by lowering the threshold standard in § 707(b) from "substantial abuse" to "mere abuse" and by dispensing with the presumption that debtors are entitled to relief. *In re Reed*, 422 B.R. 214, 220 (Bankr. C.D. Cal. 2009) (citing *In re Bender*, 373 B.R. 25, 28 (Bankr. E.D. Mich. 2007)).

[7] Section 101(10A)(B) defines "current monthly income" to exclude "benefits received under the Social Security Act."

[8] Motion to Dismiss, Dk. 29 at 3:20-22 ("The U.S. Trustee is exercising his discretion to proceed under Section 707(b)(3)'s totality of the circumstances test rather than Section 707(b)(2)'s means test.").

4

Case 6:12-bk-21006-SC    Doc 74    Filed 01/09/13    Entered 01/09/13 11:56:43    Desc
Main Document    Page 5 of 16

> 4. Whether the debtor's proposed family budget is excessive or extravagant;
>
> 5. Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and
>
> 6. Whether the debtor has engaged in eve-of-bankruptcy purchases.

*In re Price*, 353 F.3d 1135, 1139-40 (9th Cir. 2004). Under the first *Price* factor—ability to fund a chapter 13 plan—the Court is invited to consider the likelihood of the Debtors being able to fund a chapter 13 plan based on future income. Although the ability to fund a chapter 13 plan is an important factor that, "standing alone," will justify a § 707(b) dismissal, it "does not *compel* a section 707(b) dismissal of the petition as a matter of law." *In re Price*, 353 F.3d 1135, 1139-40 (9th Cir. 2004) (citing *In re Kelly*, 841 F.2d 908, 914 (9th Cir. 1988) (original emphasis). Resolution of the matter at bar turns on a question of law that remains unsettled in the Ninth Circuit—whether the court should include social security income in its analysis of the totality of the circumstances of the debtor's financial situation under § 707(b)(3)(B). As set forth below, the Court finds that because the Debtors' social security income is protected by the Bankruptcy Code from forced inclusion in a chapter 13 plan and by 42 U.S.C. § 407 of the Social Security Act, the Court should not take into account the Debtors' social security income when assessing their ability to pay under the totality of the circumstances test of § 707(b)(3)(B). Notwithstanding this analysis, the Court finds that the exigent circumstances of this case militate strongly against a finding of abuse under § 707(b)(3)(B).

## I. **Post-BAPCPA Totality of the Circumstances Factors**

The post-BAPCPA case law indicates that the *Price* factors continue to serve as the primary test of what factors a court should use to review the totality of the circumstances within the Ninth Circuit. In *In re Wells*, a post-BAPCPA case decided in 2009, the court stated:

> [T]here is little case law interpreting the phrase [totality of the circumstances] under BAPCPA. Prior to BAPCPA, the Ninth Circuit looked to the "totality of the circumstances" to interpret the term "substantial abuse" in former § 707(b). Because Congress retained the phrase "totality of the circumstances" in BAPCPA, the court may look to pre-BAPCPA case law to construe the meaning of that phrase under § 707(b)(3).

5

*In re Wells*, 08-14549-B-7, 2009 WL 159663 (Bankr. E.D. Cal. Jan. 21, 2009). Indeed, courts have recognized § 707(b)(3) to be a codification of pre-BAPCPA case law. *In re Ng*, 477 B.R. 118, 126 (B.A.P. 9th Cir. 2012) (citing *In re Clark*, 2012 WL 1309549 *1–2, 2012 Bankr. LEXIS 1639 *4 (Bankr. N.D. Cal.2012) (quoting *In re Stewart*, 383 B.R. 429, 432 (Bankr. N.D. Ohio 2008)); *In re Stewart*, 410 B.R. 912, 922 (Bankr. D.Or. 2009). Similarly, courts within the Ninth Circuit have held that *Price* is still controlling for determining abuse under § 707(b)(3). *See In re Baeza*, 398 B.R. 692, 696 (Bankr. E.D. Cal. 2008); *In re Lamug*, 403 B.R. 47, 54 (Bankr. N.D. Cal. 2009); *In re Pak*, 343 B.R. 239, 244 (Bankr. N.D. Cal. 2006); and most recently *In re Ng*, 477 B.R. 118, 126 (9th Cir. B.A.P. 2012). This Court agrees with the conclusions of the Ninth Circuit BAP in *In re Ng*, and finds that the factors outlined in *Price* provide meaningful guidance to the Court in examining the totality of the circumstances.

## II.     **The Ability to Pay Factor and Social Security Income**

The first *Price* factor is the ability of the debtor to fund a chapter 13 plan. If a debtor has the ability to fund a chapter 13 plan, that fact alone is sufficient to justify a finding of abuse under § 707(b)(3)(B), although dismissal under § 707(b)(3)(B) is not compelled as a matter of law because other mitigating factors may outweigh the ability to pay. *See In re Price*, 353 F.3d 1135, 1139-40 (9th Cir. 2004) (citing *In re Kelly*, 841 F.2d 908, 914 (9th Cir. 1988). In reviewing the totality of the circumstances, the Court may take into account both current and foreseeable circumstances. *In re Ng*, 477 B.R. 118, 126 (9th Cir. B.A.P. 2012) (quoting *In re Hartwick*, 359 B.R. 16, 21 (D. N.H. 2007); *see also Boyce v. U.S. Tr. (In re Boyce),* 446 B.R. 447, 452 (D. Or. 2011); *In re Reed*, 422 B.R. at 214, 232. In assessing the totality of the circumstances for § 707(b)(3) purposes, the Court must engage in a factual inquiry into the debtor's actual ability to repay creditors. *In re Ng*, 477 B.R. 118, 126 (B.A.P. 9th Cir. 2012) ("Whether a debtor has the ability to repay creditors under § 707(b)(3)(B) is a question of fact that requires a bankruptcy court to examine the debtor's actual income and expenses.") (citing *In re Ross-Tousey,* 549 F.3d 1148, 1162 (7th Cir. 2008)).

Here, the Debtors have a surplus net income each month of $896.94. This monthly surplus, however, would evaporate were it not for the Debtor-Husband's receipt of social

security benefits of $1,072.90 monthly. If granted, the U.S. Trustee's Motion to Dismiss would in effect force the Debtors to file chapter 13; however, as set forth below, conversion to chapter 13 would be futile and wasteful result because the Debtors' social security income is protected from compelled remittance to a chapter 13 plan.

    1.    <u>Chapter 13 Debtors Are Not Required to Contribute Social Security Income to Chapter 13 Plans.</u>

Only disposable income can be used to fund a chapter 13 plan.[9] "Disposable income" is defined by reference to the debtor's "current monthly income." § 1325(b)(2); § 101(10A)(B). In 2005, BAPCPA amended the Bankruptcy Code definition of "current monthly income" to specifically exclude social security income. § 101(10A)(B) (current monthly income "excludes benefits received under the Social Security Act").[10] This evidences Congress's intent to protect social security income in chapter 13.[11]

In the Sixth Circuit case of *Baud v. Carroll*, the court concluded that "benefits received under the Social Security Act . . . should not be included in the calculation of projected disposable income." *Baud v. Carroll*, 634 F.3d 327, 345 (6th Cir. 2011) *cert. denied*, 132 S. Ct. 997, 181 L. Ed. 2d 732 (U.S. 2012). In addition, at least one pre-BAPCPA case law from the Ninth Circuit BAP apparently allowed social security income to be taken into account in determining disposable income; however, the finding in that case has been abrogated by BAPCPA's amendment to the definition of "current monthly income" to specifically exclude social security income from current monthly income. *In re Hagel*, 184 BR 793, 798 (9th Cir.

---

[9] The Court notes that a court may not approve a chapter 13 plan over the objection of the trustee or an unsecured creditor unless the plan provides for payment in full of unsecured claims or commits all of the debtor's "projected disposable income" to the plan. *Hamilton v. Lanning*, 130 S. Ct. 2464, 2469 (2010); § 1325(b)(1).
[10] The Court notes that a court has discretion to appropriately adjust the debtor's projected disposable income if there are changes in the debtor's budget that are "known or virtually certain" at the time of confirmation. *Hamilton*, 130 S. Ct. at 2471.
[11] The Court notes that several bankruptcy courts have held that chapter 13 debtors cannot be compelled to contribute social security benefits to a chapter 13 plan. *In re Bartelini*, 434 B.R. 285 (Bankr. N.D.N.Y. 2010); *In re Wilson*, 397 B.R. 299 (Bankr. M.D.N.C. 2008); *In re Miller*, 445 B.R. 504 (Bankr. D.S.C. 2011); *In re Barfknecht*, 378 B.R. 154 (Bankr. W.D. Tex. 2007); *In re Ragos*, 466 B.R. 803 (Bankr. E.D. La. 2011); *In re Upton*, 363 B.R. 528 (Bankr. S.D. Ohio 2007); and *In re Vandenbosch*, 459 B.R. 140 (M.D. Fla. 2011). Also, a few bankruptcy court decisions have required contribution of social security benefits to chapter 13 plans. These include *In re Herrmann*, CA 10-06523-JW, 2011 WL 576753 (Bankr. D.S.C. Feb. 9, 2011); *Mains v. Foley*, 1:11-CV-456, 2012 WL 612006 (W.D Mich. Feb. 24, 2012); *In re Nicholas*, 458 B.R. 516 (Bankr. E.D. Ark. 2011); and *In re Thomas*, 10-67280-MHM, 2011 WL 350430 (Bankr. N.D. Ga. Feb. 3, 2011).

Case 6:12-bk-21006-SC    Doc 74    Filed 01/09/13    Entered 01/09/13 11:56:43    Desc
Main Document    Page 8 of 16

BAP 1995) (social security payments taken into account in determining disposable income under pre-BAPCPA law).

Moreover, the *Cranmer* Court, citing the Ninth Circuit case of *In re Welsh*, held that the debtor's retention of social security income cannot alone form the basis of a bad faith finding for chapter 13 plan confirmation purposes under § 1325(a)(3) because "[w]hen a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the Social Security Act allow him to, and thereby excludes SSI, that exclusion cannot constitute a lack of good faith." *In re Cranmer*, 697 F.3d 1314, 1319 (10th Cir. 2012) (citing *In re Welsh*, 465 B.R. 843, 856 (9th Cir. BAP 2012); *In re Thompson*, 439 B.R. 140, 144 (8th Cir. BAP 2010) (quotation omitted).[12]

2. <u>Social Security Income is Protected Under Section 407 of the Social Security Act</u>

Title 42 U.S.C. § 407(a) of the Social Security Act provides, in pertinent part, that:

> none of the moneys paid or payable or rights existing under this subchapter shall be subject to . . . the operation of any bankruptcy or insolvency law. . . . No other provision of law . . . may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

Although the Ninth Circuit has not ruled on the issue of whether § 407 of the Social Security Act precludes consideration of the debtor's social security income in the context of a § 707(b)(3)(B) totality of the circumstances inquiry,[13] the court in *In re Carpenter*, the Eighth

---

[12] *But see In re Bartelini*, 434 B.R. 285, 297 (Bankr. N.D.N.Y. 2010) ("[T]his Court also recognizes . . . that a debtor's failure to commit SSI for purposes of repaying the maximum amount to creditors may be considered as one of many factors under a totality of the circumstances inquiry to determine good faith [under § 1325(a)(3)].").

[13] *But see supra*, note 5. In dicta from Judge Pappas's dissent in *Welsh*, he states that "Despite [42 U.S.C. § 407 and 11 U.S.C. 101(10A)], the fact that a debtor receives Social Security income is considered all the time, for many different purposes, in chapter 13 cases. . . . In the context of a chapter 13 case, there is no realistic reason to consider a debtor's Social Security income for some purposes, but to ignore that same income in determining a debtor's good faith." *In re Welsh*, 465 B.R. 843, 859 (B.A.P. 9th Cir. 2012). Nonetheless, the Court notes that using the debtors' social security income against the debtors—finding an "ability to pay" based on social security income in the context of analyzing a § 707(b)(3)(B) dismissal-for-abuse motion—is antithetical to the purpose of the § 407 of the Social Security Act. Assuming that the debtor must submit his social security income in a chapter 13 for the purposes of an "ability to pay" analysis under § 707(b)(3)(B) would result—indirectly—in the social security recipient being "subject to" his creditors in a chapter 13 bankruptcy proceeding. This same type of "indirect" approach was eschewed by the majority in *In re Welsh*, who refused to follow in the chapter 13 context an approach that "does by indirection what the Code says cannot be done, which is to include Social Security benefit payments in a debtor's disposable income calculation." *In re Welsh*, 465 B.R. 843, 856 (B.A.P. 9th Cir. 2012).

Circuit Court of Appeals, citing the reasoning in the Sixth Circuit case of *In re Buren*, held that § 407(a) "operates as a complete bar to the forced inclusion of past and future social security proceeds in the bankruptcy estate." *In re Carpenter*, 614 F.3d 930, 936 (8th Cir. 2010) (citing *In re Buren*, 725 F.2d 1080, 1086 (6th Cir. 1984).[14] The *Carpenter* Court held that based on the unqualified language of the § 407 of the Social Security Act as well as the lack of any express limitation in the Bankruptcy Code, social security income is excluded from the bankruptcy estate unless voluntarily remitted by the debtor. *In re Carpenter*, 614 F.3d at 936 ("[Section] 407 does not contain any qualifying language. It explicitly demands that no past or future social security payments may be subject to the operation of any bankruptcy law. Section 407 also instructs that it is not to be limited by any other provision of law, without express reference to § 407."). The Tenth Circuit has recently placed its imprimatur on *Carpenter*'s reasoning. *In re Cranmer*, 697 F.3d 1314, 1318 (10th Cir. 2012) (quoting COLLIER ON BANKRUPTCY, ¶ 522.09[10][a] n.76 (16th ed. 2012) for the proposition that "Congress amended 42 U.S.C. § 407 to clarify that the inalienability of Social Security benefits was not repealed by the Bankruptcy Code, so that such benefits should not even become part of the bankruptcy estate.").[15]

The Court notes that the pre-BAPCPA case of *United States v. Devall*, 704 F.2d 1513, 1516 (11th Cir. 1983) held that social security payments are part of the chapter 13 estate, despite the anti-assignment provisions of the Social Security Act under 42 U.S.C. § 407, because the Bankruptcy Code limited the application of the anti-assignment provisions in chapter 13. However, as pointed out by the court in *In re Burnett*, 10-31788, 2011 WL 204907

---

[14] *See also* 2A SOCIAL SECURITY LAW AND PRACTICE § 34:17 ("[Title 42 U.S.C. § 407(a)] operates as a complete bar to the forced inclusion of past and future social security proceeds in the bankruptcy estate, and as such, it must be read as an exclusion provision, which automatically and completely excludes social security proceeds from the estate, and not as an exemption provision which must be claimed by the debtor.") (citations omitted).

[15] The Court notes that the recent Ninth Circuit BAP decision of *In re Hernandez* held that where the sheriff levied the debtor's bank account, which contained commingled social security funds, prepetition, those funds were exempt and were property of the estate subject to turnover. The *Hernandez* Court cited 42 U.S.C. § 407 and also noted that "[G]overnment benefits such as social security are intended exclusively for the benefit and support of qualified recipients." *In re Hernandez*, BAP SC-12-1209, 2012 WL 6522748 at *7 (B.A.P. 9th Cir. Dec. 14, 2012).

9

(Bankr. N.D.N.Y. Jan. 21, 2011), Congress reacted to the *Devall* case line of reasoning by amending the Social Security Act in 1983 to provide under subsection (b):

> No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

42 U.S.C. § 407(b).  The *Burnett* Court explained that the 1983 amendment "evinces Congress' clear intent that the anti-assignment provision is not to be deemed amended unless Congress specifically references the statute in the previous or subsequent legislation, absent which, social security income remains outside 'the operation of any bankruptcy . . . law.' " *In re Burnett*, 10-31788, 2011 WL 204907 at *2 (Bankr. N.D.N.Y. Jan. 21, 2011) (quoting 42 U.S.C. § 407(a)).[16]

      As a result of the above analysis, the Debtors would not be compelled to fund a chapter 13 plan with their social security benefits, although they may do so voluntarily.  It does not necessarily follow, though, that a debtor's social security income cannot be considered under an analysis of the totality of the circumstances of the debtor's financial condition for § 707(b)(3)(B) purposes.  Indeed, the cases of *In re Calhoun* and *In re Booker* hold that social security income can be taken into account when assessing the totality of the circumstances under § 707(b)(3)(B).  *In re Booker*, 399 B.R. 662, 667 (Bankr. W.D. Mo. 2009) ("The Social Security income is part of the totality of the Debtors' financial circumstances [under § 707(b)(3)(B)]."); *In re Calhoun*, 396 B.R. 270, 276 (Bankr. D.S.C. 2008) *subsequently aff'd sub nom. Calhoun v. U.S. Tr.*, 650 F.3d 338 (4th Cir. 2011) (social security income "should not . . . be excluded from consideration in analyzing ability to pay as a component of the totality of the debtor's financial circumstances under § 707(b)(3)").

      Nonetheless, the Court finds *Booker* and *Calhoun* unpersuasive in light of the weight of Circuit Court authority finding social security benefits excepted from the bankruptcy estate.

---

[16] The Court notes the Supreme Court case of *Lockhart v. United States*, where Justice O'Connor held for the majority that "We need not decide the effect of express-reference provisions such as § 407(b) to resolve this case. Because the Debt Collection Improvement Act clearly makes Social Security benefits subject to offset, it provides exactly the sort of express reference that the Social Security Act says is necessary to supersede the anti-attachment provision." *Lockhart v. United States*, 546 U.S. 142, 145 (2005).

The Court further notes that while *Calhoun* was affirmed on appeal, the Fourth Circuit specifically declined to decide the issue of whether social security benefits are included in the totality of the circumstances analysis under § 707(b)(3). *Calhoun v. U.S. Tr.*, 650 F.3d 338, 342 (4th Cir. 2011) ("[W]e need not make a determination as to . . . the inclusion of Social Security benefits in an analysis of the totality of financial circumstances."). In light of the above analysis, this Court is persuaded that Congress intended social security benefits to be protected from inclusion in a § 707(b)(3)(B) analysis, based upon § 407(a) of the Social Security Act and as shown by the Debtors' social security income being definitively excluded from the means test of § 707(b)(2).

In the case before the Court, the Debtor's ability to fund a chapter 13 plan is predicated solely on their voluntary remittance of social security benefits to the plan. Without this voluntary remittance of social security benefits, the Debtors' have no disposable income to fund a chapter 13 plan. As a result, even it were determined that the Debtors have the ability to fund a chapter 13 plan under the first *Price* factor, dismissal with the aim of conversion would be a futile waste of resources unless the Debtors were ultimately compelled to remit their social security benefits to the plan. Notwithstanding this analysis under the first *Price* factor, as articulated below, the other *Price* factors as applied to the facts of this case weigh heavily against a finding of abuse under § 707(b)(3)(B).

### 3. The Current and Future Financial Circumstances of the Debtors.

The Debtors' ongoing health concerns and the Debtors' remaining life spans add to the consideration of both a non-viable chapter 13 plan and the overall consideration of the Debtors' current and future financial situation.

The Debtors' live testimony indicated that Mr. Suttice is nearly 86 years old, and he testified that he had two leaking heart valves prior to recent surgery. He is under frequent medical observation and treatment. He is a 30 year veteran of the United States Army. Mrs. Polly-Suttice has served as an employee of the United States Government for decades prior to her retirement. Mrs. Polly-Suttice testified that due to a degenerative eye condition, she has

completely lost one eye, and now has a prosthesis. She further testified that she reasonably expects within the next several years to lose her second eye, and thus will be totally blind.

This Court has taken judicial notice of the current Social Security Administration Actuarial Life Table ("Table"), and notes that Mr. Suttice had a remaining life expectancy of 5.26 years. According to the same Table, Mrs. Polley-Suttice had a possible remaining life expectancy of 16.79 years.

As Mrs. Polley-Suttice completely loses her vision, both she and her husband will need additional physical care, including but not limited to, medical treatment, home care and transportation. Mr. Suttice, almost 86 years old, will need someone to drive him to Riverside for care at the Veterans Administration Hospital as his health and well being continues to deteriorate. This couple will need to go shopping for groceries, they will need to visit doctors, and they may want to go to a house of worship. They may want to visit family members or friends. Mrs. Polly-Suttice, now 69 years old, may require expensive medical and technological tools and devices for her to function without vision. They may require a caretaker or home healthcare worker to assist in daily tasks around the home. There may come a point, much too soon, where every penny they make will most likely be used for their basic living subsistence.

The U.S. Trustee's position that they should be assigned to a shut-in life for their remaining few years, while spending all of their social security benefits toward a chapter 13 plan and remaining wholly dependent on other federal and state funded medical and disability programs, is untenable to this Court. It is rather that the Debtors save their social security income for times and needs almost certainly too soon to come than to subject the Debtors, their creditors, and the Court's judicial resources to an unnecessary chapter 13 plan process that would either impoverish the Debtors during their remaining years or else pay the creditors nothing.

While the ability to pay under a chapter 13 plan factor would normally weigh in favor of dismissal, based on the specific facts and circumstances this Court has carefully considered in this case, this Court finds that the first *Price* factor does not weigh in favor of dismissal. Unlike

the 42 year old Mr. Ng, with many years left to contribute additional funds to his retirement, those days are gone for these Debtors.  Moreover, even if this Court found that the Debtors had the ability pay under a chapter 13 plan by voluntarily including all of their income, the net weight of the other *Price* factors and circumstances of this case would outweigh their ability to pay such that no finding of abuse under § 707(b)(3)(B).

**III.     The Remaining *Price* Factors**

    1.     The Second Price Factor: Illness, Disability, Unemployment, or Calamity

The second *Price* factor focuses on whether the Debtors' petition was filed as a consequence of illness, disability, unemployment, or some other calamity.  The facts and circumstances of this case, as they address the second *Price* factor, weigh in favor of the Debtors. The record of this case demonstrates that prior to the petition date, the Debtors incurred medical bills and cost of living expenses due to the significant health problems of both Debtors. The bankruptcy petition was the eventual result of the onset of disability of Mrs. Polley-Suttice; however, Mr. Suttice's medical condition also contributed to this situation. There was a strong, legitimate need to file for bankruptcy. This factor falls strongly in favor of denying the Motion.

    2.     The Third *Price* Factor:  Cash Advancements and Consumer Goods on Credit Exceeding Ability to repay

The third *Price* factor focuses on whether the Debtors' schedules suggest the Debtors obtained cash advancements and consumer goods on credit exceeding his or her ability to repay those advancements or goods purchased on credit.  This Court has reviewed the Debtors' schedules in this matter, and finds that there is no indication that the Debtors obtained cash advancements or made consumer good purchases exceeding their ability to repay. There has been no presentation of evidence of any such activity.  Accordingly, this factor weighs in favor of the Debtors.

    3.     The Fourth *Price* Factor: Excessive or Extravagant Family Budget

The fourth *Price* factor focuses on whether the Debtors' proposed family budget is excessive or extravagant.  Here, this Court has reviewed the Debtors' Second Amended

Schedule J, and finds that there is nothing that is either excessive or extravagant as listed in the Debtors' budget. There has been no presentation of evidence of any such activity. This factor weighs in favor of denying the Motion.

    4.    The Fifth *Price* Factor: Statement of Income and Expenses is Misrepresentative of Debtors' Financial Condition

The fifth *Price* factor focuses on whether the Debtors' statement of income and expenses is misrepresentative of the Debtors' financial condition. The initial Schedules I and J and First Amended Schedules I and J have been replaced with the Second Amended Schedules I and J, as ordered by the Court at the evidentiary hearing on this matter. The Court observes that the Debtors faced certain difficulties with former counsel, and that evidence of non-attentiveness by that former counsel to the scheduled information presentation by the Debtors resulted in some inaccuracies presented in the first two Schedule J's. The Court also makes note of the recent acquisition and appearance of new, competent counsel for the Debtors. This Court has reviewed the previously filed schedules, and the most recent ones, and finds that there is nothing that appears to be materially misrepresentative of the Debtors' financial condition within those schedules. The changes have been adequately explained (and are not contradicted by any evidence). As such, this factor weighs in favor of denying the Motion.

    5.    The Sixth *Price* Factor: Whether the Debtors Engaged in Eve-of-Bankruptcy Purchases

The final *Price* factor focuses on whether the Debtors engaged in eve-of-bankruptcy purchases. This Court has reviewed the Debtors' schedules, and finds that there is no indication of eve-of-bankruptcy purchases. There has been no presentation of evidence of any such activity. As there are no eve-of-bankruptcy purchases, this factor would weigh in favor of denying the Motion.

///

///

///

**CONCLUSION AND ORDER**

The *Price* factors weigh in favor of the Debtors. The Debtors' case should not be dismissed for abuse. Accordingly, the Motion to Dismiss is **DENIED**.

**IT IS HEREBY ORDERED.**

###

Date: January 9, 2013

Scott C. Clarkson
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): **ORDER AND AMENDED OPINION DENYING MOTION TO DISMISS FOR ABUSE** was entered on the date indicated as Entered on the first page of this judgment or order and will be served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** B Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*) 1/9/13, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

- Stephanie Acuna    sacuna@hmausa.com
- Lynda T. Bui (TR)    trustee.bui@shbllp.com, C115@ecfcbis.com
- Everett L Green    everett.l.green@usdoj.gov
- Avi Schild    bk@atlasacq.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
- Arnold H Wuhrman    Wuhrman@serenitylls.com

☐ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

Rufus Suttice
Karen Dianne Polley-Suttice
29864 Winter Hawk Rd.
SUN CITY, CA 92586

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an AEntered@ stamp, the party lodging the judgment or order will serve a complete copy bearing an AEntered@ stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page